## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY GEORGE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Case No.  10-00546-M |
| | * | |
| BAC HOME LENDING SERVICES, INC. | * | JURY TRIAL DEMANDED |
| | * | |
| Defendant. | * | |

## AMENDED COMPLAINT

COMES NOW Kimberley George, by and through her undersigned attorneys, and as her

complaint against the above-named Defendant states as follows:

## "IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY GEORGE, | * | |
| | * | |
| Plaintiff, on behalf of | * | |
| herself and all others similarly situated | * | |
| | * | |
| vs. | * | Case No.  CV 10-00546-M |
| | * | |
| BANK OF AMERICA, N.A. and BAC HOME | * | |
| LENDING SERVICES, L.P. | * | |
| | * | |
| Defendants. | * | |

COMES NOW Plaintiff Kimberley George for herself and for all others similarly

situated and as her Amended Complaint asserts the following:

## SUMMARY OF CLAIMS

These claims arise from the servicing of a real estate mortgage loan secured by the Plaintiff's property located in Mobile County, Alabama.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action is between parties that are citizens of different states and the amount in controversy is greater than $75,000. Both defendants are citizens of states other than Alabama, Plaintiff's resident state.   This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) in that this matter is brought as a putative class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from any defendant.

2.  Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and the named Plaintiff resides in this District.

## PARTIES

3.  Plaintiff is an adult resident of Mobile County and the owner of real property located at 7 Westwood Street, Mobile, AL (hereinafter "Property").  This is her homeplace.

4.  Bank of America, N.A. is a mortgage lender with headquarters at 101 Tryon Street, Charlotte, NC 28255.

5.  BAC Home Lending Services, L.P. ("BAC") is subsidiary of BOA, with its principal place of business in California which, at all times relevant hereto, did business in Mobile County, Alabama.

6.     Defendants Bank of American and BAC are, unless otherwise indicated, referred to herein collectively as "BOA."

## FACTS

### Bank of America, TARP and HAMP

7.     On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, 12 U.S.C. Section 1502 et seq. ("EESA").  The Act allocated $700 billion to the Treasury Department for the purpose of restoring liquidity and stability to the financial system. One of the Act's stated goals was "to preserve home ownership."  12 U.S.C. § 5201(2)(B).  The Act also established the "Troubled Asset Relief Program," one of the purposes of which was to reduce foreclosures.

8.     Pursuant to the EESA, President Obama, on February 18, 2009, announced the creation of the "Homeowner Affordability and Modification Program" ("HAMP") aimed at requiring and facilitating modifications of at-risk mortgages.  Under HAMP, modification eligibility requirements and guidelines have been issued which must be followed by mortgage servicing companies who participate in HAMP.  HAMP is funded by the federal government, primarily with TARP funds. The Treasury Department has allocated at least $75 billion to HAMP, of which at least $50 billion is TARP money.

9.     Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to the existing mortgage obligations in order to make the monthly payments more affordable. Servicers receive $1000.00 for each HAMP modification.

10.    Each recipient of TARP funds is required to participate in the HAMP.   Each participating servicer is required to execute a "Sevicer Participation Agreement" ("SPA") with

the federal government.  Under the SPA, participating are bound to follow the guidelines and requirements issued under HAMP.

11.     The entities that perform the day-to-day operations that are part of severing a mortgage loan (such as collection and allocation of payments, escrow management and foreclosure) are known as "servicers."  Borrowers typically consider these companies as their "Lender" because these are the only entities Borrowers have any interaction with.  However, the servicer is typically not the entity that owns the mortgage or note but rather acts as agents for the beneficial owner(s).

12.     BAC  Home Loans Servicing, LP is a servicing business operated by Bank of America, N.A. and its actions described herein were made as agents for the entities that hold mortgage loans.

13.     On or about April 17, 2009, the Senior Vice President of Bank of America, N.A., ("BOA") signed an SPA, thereby making its servicing arm, BAC, a participating servicer bound to comply with the provisions of the SPA.

14.     BOA received at total of approximately $45,000,000,000 in TARP money.  BOA, in accepting this tax-payer bailout, agreed to participate in HAMP.  Under the SPA, BOA received additional tax-payer funds in an amount of up to $798,900,000.00.

15.     The SPA executed by BOA incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Freddie Mac in connection with the duties of Participating Services.  These documents together are known as the "Program Documentation" and are incorporated by reference.  The SPA requires BOA to apply the rules, procedures and guidelines contained the Program Documentation for "all of the mortgage loans it services."   The Treasury published its initial set of HAMP Guidelines in

March 2009 and has periodically published supplemental directives addressing various aspects of the HAMP program.  BOA, as a Participating Servicer, is obligated under the SPA to follow each aspect of these guidelines, as well as the other components of the Program Documentation.

16.     The Program Documentation requires Participating Servicers to evaluate *all loans*, which are 60 or more days delinquent for HAMP modifications. If any borrower contacts BOA regarding a HAMP modification, BOA must collect income and hardship information to determine if HAMP is appropriate for that borrower.

17.     The modification process required under HAMP involves two steps.  First, the servicer must gather information from the borrower and determine eligibility for a Trial Period Plan ("TPP").  Any borrower which meets the HAMP qualifications for a TPP must receive one. Under the Trial Period Plan, the borrower is required to make at least three consecutive payments in an amount determined by the servicer by applying a formula set out in the Program Documentation.  The amount of the TPP payment should closely approximate the amount required under a permanent HAMP modification, as determined by the formula set out in the Program Documentation.

18.     BOA offers TPPs to eligible homeowners by way of a TPP Agreement, which describes the homeowner's duties and obligations under the plan and promises a permanent HAMP modification for those homeowners that execute the agreement and fulfill the documentation and payment requirements.

19.     Under the Program Documentation, once the servicer determines that a borrower meets the HAMP requirements and is eligible for a Trial Period Plan, it must issue a Trial Period Plan Notice ("TPP Notice").  The notice issued by BOA includes a written commitment by the servicer to extend a permanent modification upon successful completion of the Trial Period Plan.

20.     In addition to signing the Servicer Participation Agreement, in which BOA agreed to follow the Program Documentation, BOA has also incorporated the HAMP guidelines and procedures as their own procedures which must be followed when processing modification applications.

### *Kimberly George's Loan*

21.     On April 29, 2004, Plaintiff executed a real estate mortgage with America's Wholesale Lender in the amount of $108,790.43. This loan is subject to an initial 5.5% interest rate.  The regular monthly payment was $754.60.  At some point after the closing, the servicing of this mortgage was transferred to BOA.

22.     The mortgage agreement was drafted and provided by the lender and is substantively identical to the form employed in consumer residential mortgages in Alabama as to which BOA is the servicer.

23.     Beginning in January 2009, Ms. George began discussions with BOA regarding a possible agreement to modify the terms of the loan.

24.     Plaintiff timely sent all of the financial information and other documentation requested by BOA in order to process this request for a loan modification.

25.     During her discussions with the BOA representatives, Ms. George was told she was approved for a TPP during which she would be required to timely make three monthly payments of $648.52.  It was explained that if Plaintiff successfully finished the trial plan, she would be given a permanent loan modification.  She was told that these payments would be due beginning September 1, 2009.

26.     In August 2009, BOA mailed Plaintiff a package of documents relating to a HAMP modification.  Included in the package was a TPP Notice which extended to the Plaintiff

a Trial Period Plan.  The Plan required payments in the same amount of $648.52 which the BOA representatives had discussed with Ms. George over the phone.  Under this written Plan, payments were to start September 1, 2009.

27.    In the TPP Notice sent to the Plaintiff, BOA agreed that if the Plaintiff timely made each of her trial period payments, then it "will provide me [Plaintiff] with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."  In reliance on those representations, Plaintiff began making the trial payments as required under the plan.

28.    Plaintiff signed and returned the modification documents on or about August 23, 2009.  This was prior to the required return date.  Plaintiff timely submitted all the required information and otherwise fully complied with the TPP.

29.    Plaintiff complied in every way with the TPP modification extended by BOA. Timely payments of the agreed upon $648.52 were made for the months of September, October and November as required under the trial plan.  Furthermore, an additional payment in that amount was made and accepted by BOA for the month of December 2009.  Plaintiff was instructed by a BOA representative after the December payment to cease making payments on the loan modification. Plaintiff was told that this was necessary for BOA to process the permanent modification and to calculate a new mortgage payment based on current balance.

30.    At no point has BOA provided a written permanent mortgage modification agreement as it is required to do under the TPP agreement and the Program Documentation.

31.    Although Plaintiff fully complied with the TPP, BOA has continued to consider Plaintiff in default of her mortgage.  BOA has made numerous collection calls and sent several

collection letters claiming, falsely, that Plaintiff was delinquent on her mortgage. Plaintiff has repeatedly supplied BOA with payment records confirming that the required payments had been timely made. Moreover, BOA knows from its own documents that a TPP was in place with which the Plaintiff has fully complied.

32.      By letter dated June 6, 2010, BOA again falsely notified Plaintiff she was in default of her mortgage. The letter required a payment of $16,065.80 to bring the loan current. Plaintiff was not in default of her mortgage because she had complied in every way with all of the conditions for the trial plan modification. The amount listed as necessary for reinstating the mortgage was false and deprived Plaintiff of any meaningful opportunity to cure.

33.      By letter dated June 28, 2010, BOA informed Plaintiff that it was unable to approve a HAMP modification for her mortgage. This notice was completely false because, in fact, BOA had already approved the TPP and was obligated by the terms of its own agreement, as well as the Program Documentation, to extend a permanent modification.

34.      Despite having bound itself to a TPP, with which Plaintiff has fully complied, BOA initiated foreclosure proceedings against Plaintiff's home on August 2, 2010. These proceedings were initiated by publication in the Mobile Press Register of notice of a foreclosure sale scheduled for September 3, 2010. The notice was published for three consecutive weeks in the Mobile Press Register. The notice contained false, derogatory and defamatory information regarding the Plaintiff, including the false statement that she is in default of the terms of her mortgage.

35.      Foreclosure has been instituted by BOA in the absence of a default by Plaintiff, in violation of the TTP, in violation of HAMP and the Program Documentation and in the absence of any legal basis for conducting a foreclosure.

36. These misrepresentations made to Plaintiff as alleged herein were part of a pattern and practice of deception and misinformation directed to borrowers whom BOA considers in default. These misrepresentations lull borrowers into a false belief that the foreclosure will be avoided through modification when in fact BOA will proceed to foreclosure regardless of the borrower's compliance with the modification-related terms. This pattern of deception results, either intentionally or not, in the borrower's belief that foreclosure proceedings will not begin or, if they have already begun, that BOA has no intention of following through with a sale. As a consequence, borrowers falsely conclude that no other action is necessary to avoid a foreclosure such as reinstatement or exercise of other rights available under law. By the time borrowers realize BOA's true intent regarding the foreclosure; it is too late to pursue reinstatement or other legal alternatives to the foreclosure.

37. This action was initially filed in Mobile County Circuit Court on September 1, 2010. When the suit was filed, Plaintiff, through her attorney, notified BOA that she intended to seek an injunction of the foreclosure if the foreclosure was not voluntarily cancelled. In response, BOA cancelled the foreclosure.

## COUNT I
### (BREACH OF MORTGAGE AGREEMENT)

38. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

39. The acts and omissions made by Defendants in connection with management of the Plaintiff's mortgage constitutes a breach of the mortgage and note. Specifically, Defendants have failed to apply payments made during the TPP in accordance with the terms of the mortgage and has failed to provide accurate reinstatement amounts as required under the mortgage in order to provide a meaningful opportunity to cure a default.

40.     Plaintiff has suffered damage as a proximate result of the Defendants' breach.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for breach of the mortgage and award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs.  Plaintiff further request such other relief as the Court deems just and proper, the premises considered.

## COUNT II
### (BREACH OF TRIAL PERIOD PLAN AGREEMENT)

41.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

42.     The TPP modification documents provided by BOA and signed by Plaintiff constitute a written enforceable agreement, binding on both parties.

43.     The Plaintiff has complied with the terms of the TPP agreement.

44.     Defendant is in breach of the TPP agreement. Defendant's breach includes, but is not limited to, the failure to provide a permanent modification and institution of  foreclosure proceedings in absence of any default under the TPP.

45.     Plaintiff has suffered damage as a proximate result of Defendants' breach.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for breach of the TPP agreement and award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT III
### (BREACH OF DUTY OF FAIRNESS AND GOOD FAITH)

46.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

47.     Defendants at all relevant times owed Plaintiff an implied quasi-fiduciary duty of fairness and good faith as to all aspects of the mortgage agreement, including the management of their payments and the exercise of any power of sale clause contained in the mortgage.

48.     The acts and omissions made by Defendants in connection with management of the Plaintiff's mortgage constitute a breach of the duty owed by Defendant.  Those acts and omissions include, but are not limited to, the following: the failure to comply with its own procedures and the HAMP at the Program Documentation which inure to the Plaintiff's benefit; the failure to comply with its own written agreements and statements provided to Plaintiff; providing Plaintiff with false, inconsistent and misleading information regarding the status of her modification and foreclosure; and the institution of the foreclosure proceedings, publication of foreclosure notice and attempted foreclosure sale while Plaintiff was in compliance with the TTP agreement.  The trust imposed upon Defendants by Plaintiff and by operation of law and equity has been breached by the said acts and omissions of Defendants as alleged herein, and Plaintiff has been damaged as a result of said breach.

WHEREFORE, Plaintiff requests that this Court enter a judgment against the Defendants for breach of the duties owed to Plaintiff.  Plaintiff also requests that this Court award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs, and punitive damages.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
### (PROMISSORY ESTOPPEL, IN THE ALTERNATIVE)

49.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

50.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described herein.

51.     Defendant, by way of its TPP Agreements, made representations to Plaintiff that if she  returned the TPP Agreements executed and with supporting documentation, and made their TPP payments, they would receive permanent HAMP modifications.

52.     Defendant's TPP Agreements were intended to induce Plaintiffs to rely on them and make monthly TPP payments.

53.     Plaintiffs did indeed rely on Defendant's representation, by submitting TPP payments.

54.     Given the language in the TPP Agreement, Plaintiff' s reliance was reasonable.

55.     Plaintiff's reliance was to their detriment. Plaintiff has yet to receive a permanent HAMP modification and have lost the opportunity to fund other strategies to deal with their default and to avoid foreclosure.


**COUNT V**
**(NEGLIGENCE)**

56.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

57.     The acts and omissions made by Defendants in connection with their management of the Plaintiff's account constitute negligence.  Those acts and omissions include, but are not limited to, the following: the failure to comply with its own procedures and the Program Documentation which inure to the Plaintiff's benefit; the failure to comply with its own written agreements and statements provided to Plaintiff; the continued treatment of Plaintiff as if they have defaulted on their mortgage when in fact they have not; and the institution of the

foreclosure proceedings, publication of foreclosure notice and attempted foreclosure sale in the absence of any default.

58.     Plaintiff has suffered damage as a proximate result of the Defendant's negligence.

59.     Defendants have negligently hired, trained and/or supervised their employees.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for negligence and award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT VI
### (WANTONNESS)

60.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

61.     The acts and omissions made by Defendants in connection with their management of the Plaintiff's account constitute wantonness.   Those acts and omissions include, but are not limited to, the following: the failure to comply with its own procedures and the Program Documentation which inure to the Plaintiff's benefit; the failure to comply with their own written agreements and statements provided to Plaintiff; the continued treatment of Plaintiff as if they have defaulted on their mortgage when in fact they have not; and the institution of the foreclosure proceedings, publication of foreclosure notice and attempted foreclosure sale in the absence of any default.

62.     Plaintiff has suffered damage as a proximate result of the Defendants' wantonness.

63.     Defendants have wantonly hired, trained and/or supervised its employees.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for wantonness and award compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT VII
### (WRONGFUL FORECLOSURE)

64.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

65.    The institution of foreclosure proceedings by Defendants was wrongful.

WHEREFORE Plaintiff requests that this Court enter judgment against Defendants for wrongful foreclosure and award compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT VIII
### (SLANDER/DEFAMATION)

66.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

67.    In publishing the above-described foreclosure notice, Defendants published false and defamatory information concerning Plaintiff. Specifically, Defendants published statements indicating that Plaintiff was in default of her mortgage and that Defendants were rightfully entitled to foreclose.  Those statements were made with the knowledge that they were false or with reckless disregard of whether they were false.

68.    Plaintiff has suffered damage as a result of Defendants' defamatory statements.

69.   The acts and omissions which form the basis of this claim do not include any reporting of information to any consumer reporting agency.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for defamation and award compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IX
### (FRAUD)

70.   The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

71.   Defendants made several misrepresentations of material fact to Plaintiff.  These statements include, but are not limited to, the statement that Plaintiff was approved for a TPP and that, upon the Plaintiff satisfactory completion of that plan, a permanent modification would be extended.  As alleged above, these statements were made verbally to Mrs. George and also made in writing.  Defendants' misrepresentations also include statements made over the phone by BOA representatives to Mrs. George that the modification plan was in effect, that BOA did not consider her to be in default and that there would be no adverse actions taken against her.

72.   The above misrepresentations were false when made and BOA knew them to be false.  The misrepresentations were made willfully to deceive, or recklessly without knowledge or were made innocently by mistake.  To the extent the misrepresentations concern action to be taken in the future, the statements were made without any present intent to take actions consistent with those statements.

73.   The misrepresentations were relied upon by the Plaintiff to her detriment.

74.     These misrepresentations were part of a pattern and practice of deception and misinformation directed to borrowers whom BOA considers in default.   These misrepresentations lull borrowers into a false belief that the foreclosure will be avoided through modification when in fact BOA will proceed to foreclosure regardless of the borrower's compliance with the modification-related terms.   This pattern of deception results, either intentionally or not, in the borrower's belief that foreclosure proceedings will not begin or, if they have already begun, that BOA has no intention of following through with a sale.   As a consequence, borrowers falsely conclude that no other action is necessary to avoid a foreclosure such as reinstatement or exercise of other rights available under law.   By the time borrowers realize BOA's true intent regarding the foreclosure; it is too late to pursue reinstatement or other legal alternatives to the foreclosure.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant BOA for fraud and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

<u>COUNT X</u>
**(CLASS CLAIMS)**

75.     Plaintiff repeats and re-allege every allegation above as if set forth herein in full.

76.     This class action is brought by the Plaintiff on behalf of herself and all Alabama homeowners whose loans have been serviced by Defendants and who, since April 19, 2009, have complied with their obligations under a written TPP and have not received a permanent HAMP modification.

77.     Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

78.     Plaintiff asserts on behalf of herself and the class described herein the claims set out in Counts I, II, III, IV, VII.

79.     Plaintiff does not know the exact size or identities of the proposed class, since such information is in the exclusive control of Defendants. Plaintiffs believe that the class encompasses many hundreds of individuals and whose identities can be readily ascertained from Defendants' books and records.  Therefore, the proposed class is so numerous that joinder of all members is impracticable.

80.     Based on the size of the modifications at issue, Plaintiff believes the amount in controversy exceeds $5 million.

81.     All members of the class have been subject to and affected by the same conduct. The claims are based on standard form contracts and uniform loan modification processing requirements.  There are questions of law and fact that are common to the class, and predominate over any questions affecting only individual members of the class. These questions include, but are not limited to the following:

a.      The nature, scope and operation of Defendants' obligations to homeowners under HAMP;

b.      Whether Defendants' receipt of an executed TPP Agreement, along with supporting documentation and three monthly payments, creates a binding contract or otherwise legally obligates Defendants to offer class members a permanent HAMP modification;

c.      Whether Defendants' failure to provide permanent HAMP modifications and/or the institution of foreclosure proceedings when a homeowner has complied with a

TPP amounts to a breach of contract and/or a breach of the covenant of good faith and fair dealing; breach of the mortgage; and/or wrongful foreclosure.

d.     Whether Defendants' treatment and allocation of payments received during a trial payment plan period violates the mortgage and

e.     whether the Court can order damages and enter injunctive relief.

82.     The claims of the named Plaintiff are typical of the claims of the class and do not conflict with the interests of any other members of the class in that both the Plaintiff and the other members of the class were subject to the same conduct, signed the same agreement and were met with the same absence of a permanent modification.

83.     The named Plaintiff will fairly and adequately represent the interests of the class. Plaintiff is committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

84.     A class action is superior to other methods for the fast and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

85.     This putative class action meets both the requirements of Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

86.     The Defendants have acted or refused to act on grounds that apply generally to the

class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

WHEREFORE, the Plaintiff, on behalf of the class, respectfully requests the following relief:

a. Certify this case as a class action and appoint the named Plaintiff to be class representative and her counsel to be class counsel;

b. Enter a judgment declaring the acts and practices of Defendants complained of herein to constitute a breach of contract and a breach of the covenant of good faith and fair dealing, wantonness, breach of the mortgage, negligence and wrongful foreclosure;

c. Enter a judgment declaring that Defendants are required by the doctrine of promissory estoppel to offer permanent modifications to class members on the terms promised in class members' temporary modifications;

d. Enter a judgment declaring any foreclosure sale null and void when the proceedings were instituted while the homeowner was in compliance with a TPP or where such foreclosure proceedings were otherwise instituted in violation of the HAMP and the Program Documentation;

e. Grant a permanent or final injunction enjoining Defendants' agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiffs and the members of the Class;

f. Order Defendants to adopt and enforce a policy that requires appropriate training of their employees and agents regarding their duties under HAMP;

g. Order specific performance of Defendants' contractual obligations together with other relief required by contract and law;

h.     Award actual and punitive damages for Defendants' wrongful actions as alleged

herein;

i.     Award attorneys fees and costs.

j.     Grant Plaintiff and the Class such other and further relief as this Court finds

necessary and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON EACH AND EVERY CLAIM ASSERTED
HEREIN"**

/s/ Earl P. Underwood, Jr. _____
**EARL P. UNDERWOOD, JR.** (UNDEE6591)
**KENNETH J. RIEMER**
**JAMES D. PATTERSON**
**Attorneys for Plaintiff**

**OF COUNSEL:**
**UNDERWOOD & RIEMER, P.C.**
**166 Government Street, Suite 100**
**Mobile AL 36602**
**Phone:   251.432.9212**
**Fax:        251.433.7172**
**jpatterson@alalaw.com**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this the 17TH day of November, 2010, I electronically filed
the foregoing with the Clerk of the Court using the CM/ECF system , which will send electronic
notification of such filing to all counsel of record.

/s/ Kenneth J. Riemer _____
**KENNETH J. RIEMER**

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL AS FOLLOWS:**

Bank of America, National Association
c/o THE CORPORATION COMPANY
2000 INTERSTATE PARK DRIVE SUITE 204
MONTGOMERY, AL 36109